FILED

2008 Mar-10  AM 10:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DIVISION OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **GEORGE DIAL**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Civil Action No. 7:05-cv-1025-TMP** |
| **ADVANCE AUTO STORES** | ) | |
| **COMPANY, INC., d/b/a ADVANCE** | ) | |
| **AUTO PARTS and ROGER CRAIN**, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This cause is before the court on the motion for summary judgement filed April 3, 2007, by the defendants, Advance Auto Stores Company, Inc., d/b/a Advance Auto Parts ("Advance") and Roger Crain.  Plaintiff alleges a single claim under 28 U.S.C. § 1981 for racial discrimination in employment.  Defendants seek dismissal of plaintiff's claim.  This matter has been fully briefed, and the court has considered the evidence and arguments set forth by both parties.  The parties consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment

1

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Caltrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admission of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n. 11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 251; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewistion, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

## II. FACTS

Applying the above standards to the evidence before the court, the following facts are accepted as undisputed or, if disputed, taken in a light most favorable to the non-moving plaintiff. The plaintiff, George Dial, is an African-American. (Under Seal 2, 13).  He was hired by defendant Advance on September 16, 2002, as the store manager for the Demopolis, Alabama, store.[1]  Id.  As store manager, Dial was responsible for the day-to-day store operations, scheduling, sales, inventory, and store appearance.  (Dial Depo., p. 124).  Dial had the authority to hire and discipline employees, but he could not terminate them without approval from his superiors.  Id.  He received a copy of Advance's employee handbook and on-the-job training at the Thomasville store.  Id.  Dial was supervised by Roger Crain from September 16, 2002, until Dial was terminated on June 19, 2003. Id. at p.127.  Crain has been the Division Manager over the Demopolis store and ten others since April 23, 2001, when he joined Advance after its merger with his then-employer, Carport Auto Parts. (Crain Dec., ¶ 1).

Before being hired by Advance, Dial spent most of the 1990s working for a competitor auto-parts company, Auto Zone.  Dial worked for Auto Zone as a parts pro, a commercial specialist, an assistant manager, and, eventually, a store manager.  (Dial Depo., p. 103).  He spent two to three years working as a store manager for Auto Zone before being hired by Advance.  Id. at p. 104.  At the time he was hired by Advance, Dial was not working as an auto-parts store manager.  He was advised of the job opening at the Demopolis store by another African-American store manager, Joe

---

[1]  The court observes in passing that the site of plaintiff's employment, Demopolis, is in the judicial district for the United States District Court for the Southern District of Alabama, but because the defendants reside in and can be located in the Northern District, venue is proper here.  See 28 U.S.C. § 1391(b) and (c).  In any event, any issue concerning venue has now been waived.

Williams, who give him Crain's phone number and encouraged him to inquire about the manager's position. Dial contacted Crain, met with him once, and then participated in a formal interview with Crain and Crain's supervisor, Paul Moen. At the conclusion of the interview, plaintiff was offered the job at the Demopolis store.

When Dial was hired by Advance, Crain told him that there would be challenges at the store. He pointed out that the assistant store manager, Shirley McCoy, was "sore" because she wanted the manager's job, and that he "was going to have some problems out of some of the employees, some of the white employees working for a black store manager." (Pl. Depo. at p. 43:1-5). Crain told Dial about ongoing problems with sales volume and inventory control, and that he would need to improve sales, reduce inventory "shrink,"[2] and improve customer service and "comp numbers"[3] for the store. Id. at p. 131-34. During the course of Dial's employment, Crain repeatedly talked to Dial about improving these problems. Id.

Plaintiff received his first three-month performance review from Crain on December 11, 2002. (Under Seal 2). In that review Dial met standards for seven of the fifteen areas reviewed, id., but Crain listed "overall performance" at the store as below standard because eight areas of review

---

[2] Shrink is lost or unaccounted-for merchandise. (Crain. Dec. ¶ 3). Whether "shrink" numbers are good or bad is measured by actual inventory shrinkage compared to a budgeted amount. For each time period, a store is assigned a certain budgeted amount of shrink to be expected. Good shrink numbers are less than the budgeted amount; bad shrink numbers exceed the expected amount budgeted.

[3] A store's "comp numbers" are comparative numbers of sales volume from year to year. (Crain. Dec. ¶ 3). Positive comp numbers show that the store is doing better than in the previous year. Id. Negative comp numbers show that the store is doing less volume or making less profit than in the previous year. Id.

5

were still below standard.  Crain did note, however, that overall performance was improving and that the store was "moving towards getting back on track."  Id.

On April 10, 2003, having never before received any written disciplinary warnings, Dial was given three separate written warnings by Crain.  Id..  These warnings dealt with job performance, violation of company policy with respect to bank deposits, and time and attendance issues.  In one disciplinary warning, Crain described the problem as follows:

> 4/7/03 — 2 deposits were taken to the bank by the Parts Pro on 4-7-03 and dropped, the deposits were for 4/6 and 4/5.  Policy clearly states no more than 1 deposit in store overnight.  We must protect teams & assets.

Crain then described the corrective action taken as:

> George given a final corrective on deposit policy per shrink manual.  Any further violation on deposit policy will result in termination.

In a second disciplinary notice, the issue was described this way:

> Time attendance issues over the last 30 days.  Coming in late and leaving early. George makes his own schedule and need to handle personal business on his time off. Any and all schedule variations must be approved by DM [district manager].  George must clock in and out as required.

The explanation for the disciplinary action was:

> George must lead the team in clocking and time reporting.  All exempt management (full time) in Division 2509 required to work 50 hours, performance of store may require additional hours to be worked.  This is a minimum job requirement.
> Time edits in the store must be minimized, too many adjustments being done in the store as a whole.
> Store must be run to payroll % (percent) budgeted.

6

Finally, the third disciplinary notice reported:

> — Store continues to show negative comps.  And continues to miss budget weekly.
>
> — Shrink budget continues to be missed and does not meet required budget goals.

Crain described the reason for the disciplinary action as follows:

> — George must lead store in obtaining positive comps on a consistent basis.  George must lead team in proper handling of shrink and inventory issues resulting in shrink budget being met.  Team must be trained and held responsible.
> — Store budget goals must be achieved consistently.  George has 60 days to show improvements and meet requirements resulting in immediate and ongoing results.

(Under Seal 2).  Dial was given 60 days to improve the store's comp numbers or face dismissal.

(Dial Depo., p. 196).

Dial was terminated by Advance on June 19, 2003.  (Under Seal 2).  Advance cited Dial's

failure to improve the store's comp numbers in the 60-day period and general poor performance.

Id.  Specifically, the June 19, 2003, Employee Action Report cited Dial's "-10.76% comp YTD" as

the lowest in Crain's division.  Id.  Crain wrote in the Employee Action Report:

> Final Corrective interview given on 4/10/2003 for failing to meet budget in sales and for ongoing negative comps.  Immediate and lasting results were to be met and store continues to show negative comps. Last -18.85% lowest in division.  -10.76% comps YTD lowest in the division.  Store has lowest YTD customer count in the division with -11.22%.  Store has -2.36% shrink last week.

Dial was replaced by his white assistant store manager, Shirley McCoy.  (Under Seal 1, 3,

13).  Several white store managers in Crain's division also had budget problems, but were not

terminated. (Under Seal 3-12).[4]  Generally, however, these white store managers worked for shorter periods of time than plaintiff before voluntarily leaving their employment, or the performance of their stores seemed to be improving.[5]

 During his employment, Dial's co-workers made various comments about his race.  Donnie Humphreys told plaintiff, "I'm 54 years old and I've never worked for a black man in 54 years and I'm not fixing to start now for this."  Id. at p. 45.  Dial reported to Crain that Humphreys had quit and repeated Humphreys's statement back to Crain.  Id. at p. 46.  Crain responded, "Oh, well."  Id.  In another conversation, Crain told Dial that Frank Fields, a parts pro at the Demopolis store, had said to him that "...white people is [sic] not going to buy no parts from a black store manager."  After repeating that statement to Dial, Crain said,  "We've got to do something about it."  (Dial Depo., p. 51).[6]

---

[4]  Defendants' motion to strike the plaintiff's legal memos/summaries (Doc. 39) is DENIED, as the summaries merely summarize voluminous business records in the court record as the documents Under Seal.

[5]  For example, plaintiff points to Store #5859 from November 26, 2003, to April 24, 2004. But during that five-month period, the store had two managers, one leaving after four months and the other leaving after less than two months.  (Under Seal 13).  At Store #5156, there were three managers during the 14 month period from September 11, 2003, to November 22, 2004, the longest being seven months.  (Id.)  The court notes that Store #5946 had the same white manager during the entire nine-month period from July 31, 2003, to April 20, 2004, but from August 27, 2003, through the end of the period measured, that store's negative sales "comp" got smaller, until it received a positive comp number on April 20, 2004.  (Under Seal 11).  Likewise, the negative profits "comp" got smaller in each of the last three reporting periods, and the shrink percentage was less than -1% in three of the five reporting periods.  (Id.).

[6]  Plaintiff has offered the declaration of Tonya Bryant as evidence that she  heard Crain make this comment in connection with plaintiff's termination and, in fact, that it was the reason for his dismissal. Defendants have moved to strike Bryant's statements and seek sanctions.  Although Bryant's statement that she heard Crain say that "white people won't buy car parts from a black manager" is not hearsay under FRE 801(c) because it is not being offered to prove the truth of the matter asserted, the court cannot accept it as true because it conflicts directly with plaintiff's own

Some time later, Crain and a Loss Prevention Investigator ("LPI") interviewed the employees at Dial's store after Dial informed Crain of his suspicion that someone was "sliding" merchandise.[7] (Dial Depo. p. 165-166). After coming out of their interviews with Crain and the Loss Prevention Investigator, Frank Fields and Dawn McGee, a driver/inventory specialist, said "we got him" as they high-fived each other. Id. at pp. 167, 64. Dial did not ask Fields or McGee who they were talking about. Id. at p. 167. When Dial's interview started, Crain and the LPI said, "we've got you," and "do you want to confess now or do you want to let the police take you out?" Id. at p. 162-167. They

_____

testimony about the remark. (Bryant Dec., ¶ 3; Dial Depo., p. 51). Plaintiff himself clearly testified that the remark was not made at the time he was discharged, but at another time, and that it was not a statement of the reason for his termination. The court must accept *plaintiff's* version of the facts, not another version that is different from, by arguably better than, his. The Eleventh Circuit Court of Appeals previously has ruled that the court should use the facts set forth by the plaintiff himself when the testimony of witnesses is contradictory:

> As we said in Draper v. Reynolds, 369 F.3d 1270, 1272 (11th Cir. 2004), and Rowe v. Ft. Lauderdale, 279 F.3d 1271, 1279 (11th Cir. 2002), we accept the nonmovant's version of events when reviewing a decision on summary judgment. When the movant has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant. Instead, when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*. Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided.

Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005)(emphasis in original). Thus, insofar as Bryant's declaration is contradicted by plaintiff's own testimony, the motion to strike that portion of the declaration (Court Doc. # 40) is GRANTED. The motion is DENIED with respect to those parts of the declaration in which Bryant gives her observation that white employees were treated better than African-American employees. See FRE 701(a).

[7] "Sliding" is letting merchandise leave the store without being paid for. (Crain Dec., ¶ 7).

questioned him about whether he had given special discounts on merchandise to L&L Automotive, a "black shop," but ultimately they found nothing improper with Dial's handling of the account. Dial felt that the interview and the comments were racially motivated. (Dial Depo., pp. 163-64, 167). As a result of the employees' interviews and investigations into "sliding" merchandise, Antonio Daniels, a cashier, was discharged. (Dial Depo., p. 170), but Dial was not disciplined in any manner.

Dial believes that he received poor performance evaluations because of his race. Id. at pp. 81-83. Dial believes that Crain should have dealt with the racial issues that Dial was dealing with in the store. Id. at pp. 76-77. Dial alleges that Crain was aware of the racial problems in the store even though Dial never specifically asked Crain to handle those issues. (Dial Depo., pp. 173-174). Dial claims that Crain should have talked to Dial's employees on his own, even without a request from Dial. Id. When asked specifically whether he had told Crain or anyone at Advance that he thought he was being discriminated against, Dial admitted that he had not. Id. at p. 200. Dial never complained to the EEOC while he was employed that he was being discriminated against because of his race. Id. at p. 201.

Other former Advance employees have come forward to support Dial's claim that Advance exhibited a pattern of racial discrimination. Walter Green[8], an African-American male, was the Store Manager of the McFarland Boulevard store in Tuscaloosa, Alabama. (Green Dec., ¶ 2). He was

---

[8]    Green's testimony is offered to show that Advance exhibited a pattern of racial discrimination. Green's declaration (Green Dec., ¶¶ 1, 2, 4, 5, 6) is based on his personal experience and knowledge. The court does agree with defendant, however, that Green Dec. ¶ 3 is inadmissible hearsay. Green Dec. ¶ 3 is an out-of-court statement which is being offered for the proof of the matter asserted, i.e. that African-American store employees were in jeopardy of losing their jobs because of Roger Crain. This hearsay statement does not fall under a hearsay exception and therefore is excluded. Accordingly, the motion to strike (Court Document # 43) is GRANTED in part and DENIED in part.

subsequently transferred to the Advance store on Third Avenue in Birmingham, Alabama, which is a predominantly African-American area of the city.  Id.  Green stated that he saw a pattern within Advance stores of assigning management employees to stores based on the race of the majority of the store's customers.  Id. at ¶ 4.  Further, it was Green's opinion that African-American store managers were subjected to harsher discipline than were white store managers, although he gives no specific examples of disparate treatment.  Id. at ¶ 6.

Orryon Williams, an African-American male and Advance assistant manager, was asked by Crain to transfer from the McFarland Boulevard store in Tuscaloosa to Martin Luther King Boulevard, which is in a predominately African-American section of Tuscaloosa.  (Williams Dec., ¶¶ 2, 3).  This request was consistent with his belief that Advance assigned management employees to stores based on racial matching.  Id.  Williams was terminated two or three weeks after he refused to transfer.  Id. at ¶ 4.[9]

---

[9]   Advance contends that the testimony of Williams should be excluded because it is a violation of a settlement agreement he made with Advance.  Plaintiff counters that Williams is not in violation of the settlement agreement.  (Plaintiff's Response, Williams p. 2).  An analysis of whether Williams is in violation of the settlement agreement is unnecessary as this court has the authority to hear relevant evidence under Federal Rule of Evidence 402.  If Williams did violate his settlement agreement, Advance may bring a separate action for breach of contract.  Exclusion of Williams' declaration in this action is inappropriate under the Federal Rules of Civil Procedure.  See Baker by Thomas v. General Motors Corp., 522 U.S. 222, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998) (state court injunction entered part of a settlement cannot prohibit a witness from testifying in other actions beyond the jurisdiction of that court).  Williams' testimony is proffered to show that Advance, and Crain specifically, had a policy of racial discrimination.  It is relevant to the instant case because it lends support to Plaintiff's contention that Advance's stated reasons for his termination were a pretext.  Advance also attacks Williams' statement that Advance assigned store management to match the racial composition of the area as being without a factual basis.  The factual basis of Williams' statement are his own personal observations and knowledge obtained while working for Advance.  Accordingly, the motion (court document # 42) is DENIED.

Drawvorski Lee McGruder was employed by Advance as a store manager of the McFarland Boulevard store from October of 1999 until June, 29, 2001, when he was terminated by Crain. (McGruder Dec., ¶ 1).[10]   Prior to 1996, McGruder worked for Carport, where Crain was an executive.  Id. at ¶ 2.  While employed with Carport, McGruder inquired with Crain about the possibility of being trained for a management position.  Id.  Crain told McGruder that he was a "physical-type worker".  Id.   Crain gave McGruder the choice of transferring to work in the warehouse or leaving the company.  Id.  Crain told McGruder that he would not stop McGruder from collecting his "pennies" if McGruder chose to leave.  (McGruder Dec., ¶ 2).  McGruder chose to leave Carport.  Id. [11]

When Crain was hired as McGruder's District Manager in March 2001, McGruder immediately felt that his job was in jeopardy[12] because of his previous experience with Crain.  Id. at ¶ 3.  In June, 2001, Crain, without any input from McGruder, placed a white assistant manager in Training ("AMIT") on McGruder's payroll.  Id. at ¶ 4.  The white AMIT, Richard Fordham, did not work at McGruder's store.  (McGruder Dec. ¶ 4).  As a result of this, McGruder's store was consistently over budget.  Id.

_____

[10]   See n. 6.  McGruder's testimony is admissible for the same reasons.  McGruder's declaration is offered to show that Crain and Advance engaged in a policy of racial discrimination in which they fired African-American employees for pretextual reasons.

[11]   Crain's statements that McGruder was a "physical-type worker," that he had the choice of transferring or leaving the company, and that Crain would not stop McGruder from collecting his "pennies," all are admissible as admissions by a party-opponent.  FRE 801(d)(2).

[12]   Advance challenges McGruder's assertion as having no factual basis.  McGruder's personal experience with Crain is the factual basis of his belief that his job was in jeopardy.  Of course, the fact that McGruder felt that way does not prove that Crain had any such motivations.

In July, 2000, McGruder was told by his direct superiors at Advance that he was supposed to promote Joseph Free, a white AMIT, to assistant manager over Orryon Williams.[13]  Id. at ¶ 7.  McGruder felt that Free was not as qualified as Williams for the position.  Id.  McGruder was informed by his superiors that Advance had a policy that store managers "reflect the community" where the store was located.  Id.

On June 29, 2001, four months after Crain was hired, McGruder was fired for poor performance and high shrink rates.  (McGruder Dec. ¶ 5).  McGruder contends that the high shrink rate was due to a change in store SKU numbers.  Id.  Crain previously had accused an independent auditor of conspiring with McGruder to "rig" the results of the inventory audit to show good results.  Id. at ¶ 6.  In McGruder's opinion Advance's stated reasons for terminating him are untrue.[14]  Id. at ¶ 8.

Advance has an official Equal Employment Opportunity Policy that prohibits discrimination "on the basis of race, color, religion, sex, age, national origin, disability or any other legally protected status." (Crain Dec., ¶ 10; Def. Ex. 5).  Advance's policy states that any employee problems can be reported to the employee's supervisor, human resources, or the employee hotline.  Id.  Dial never reported that he thought he was being discriminated against while at Advance.  (Dial Depo., p. 200).

---

[13]  McGruder's statement that he was told by his superiors to hire Free over Williams, and that Advance had a policy that store managers "reflect the community" that the store is in, are admissions by a party-opponent. FRE 801(d)(2). McGruder's statement that Crain accused him and the independent auditor of "rig[ging]" the results of the inventory audit also is an admission by a party-opponent.  Id.  Therefore, these statements are admissible.

[14]  McGruder's belief that Advance's stated reasons for firing him are untrue is based on his own personal experience and knowledge.  For all the reasons set forth in notes 8-11, the motion to strike (Court Doc. # 41) is DENIED.

## III. DISCUSSION

Defendants seek summary adjudication of plaintiff's sole § 1981 claim.  Defendants assert that plaintiff has failed to prove a *prima facie* claim of racial discrimination or retaliation and that, even if the *prima facie* showing were made, the plaintiff has failed to show that the stated, non-discriminatory reason for terminating the plaintiff was pretextual, and that the real reason was violative of 42 U.S.C. § 1981.

### A. Discrimination

Plaintiff alleges that he was terminated on the basis of his race.  Under 42 U.S.C. § 1981, the elements which a plaintiff must prove to establish a disparate treatment claim are identical to those which must be proven under Title VII.  Peterson v. BMI Refractories, 132 F.3d 1405, 1417 n.13 (11th Cir. 1998); see, *e.g.*, Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 843 n. 11 (11th Cir. 2000).  "Section 1981 protects an individual's right to be free from racial discrimination in the 'making, performance, modification, enforcement, or termination of contracts.' " Austin v. City of Montgomery, 196 Fed. Appx. 747, 749 (11th Cir. 2006)(quoting 42 U.S.C. § 1981).

A plaintiff may establish a claim of individual disparate treatment through either direct or circumstantial evidence.[15]  See Davis v. Mgmt. Tech., 193 Fed. Appx. 872, 874 (11th Cir. 2006).

---

[15]   Recently, the Eleventh Circuit held that private, non-class actions for employment discrimination cannot be proven by reference to an employer's "pattern and practice" of alleged discrimination.  This method of proof is reserved for class actions alleging employment discrimination.  See Davis v. Coca-Cola Bottling Co. Consolidated, ___ F.3d ___, 2008 WL 314962 (11th Cir., No. 05-12988, February 06, 2008).  Thus, the court will not address the plaintiff's "pattern and practice" evidence.  Nonetheless, the experiences of other black employees dealing with Crain and Advance may be probative and admissible under FRE 404(b) as showing a "plan, scheme, or motive" to discriminate on defendants' part.  See Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1286 (11th Cir. 2008); see also Sprint/United Management Co., ___ U.S. ___, 2008 WL

"Direct evidence is that which 'establishes the existence of discriminatory intent behind the employment decision without any inference or presumption.' " Njie v. Regions Bank, 198 Fed. Appx. 878, 882 (11th Cir. 2006)(quoting Equal Employment Opportunity Comm'n v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000)).   "Only the most blatant remarks whose intent could be nothing other than discrimination ... constitute direct evidence of discrimination." Earley v. Champion Int'l Corp., 907 F. 2d 1077, 1081 (11th Cir. 1990)(quoting Carter v. City of Miami, 870 F. 2d 578, 582 (11th Cir. 1989)).

Plaintiff's counsel argues that both plaintiff and Tonya Bryant heard Roger Crain tell plaintiff that he was being dismissed because "white people won't buy car parts from a black manager."  The deposition of plaintiff himself contradicts this assertion.  Plaintiff specifically stated that Crain made the statement some time prior to his termination and, further, when asked if Crain said anything to plaintiff about his race when he was discharged, plaintiff stated that he had not.  Plaintiff contradicts Bryant's declaration that Crain made the statement as an explanation of why plaintiff was being dismissed.  Accordingly, Bryant's declaration cannot be considered for that point.  See Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005).  Therefore, the court finds no direct evidence of discrimination, as all of the alleged racial remarks and actions of the defendant require an inference or presumption to link them to plaintiff's termination.

Where there is no direct evidence of discrimination, a plaintiff must prove intent through circumstantial evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  In order to establish a *prima facie* claim of discrimination through circumstantial evidence, "a plaintiff must show: (1) she was a member of a protected class; (2) she was qualified

---

495370 (U.S. Sup. Ct., Feb. 26, 2008).

15

for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside her class." Anderson v. United Parcel Serv., Inc., No. 07-10863, 2007 U.S. App. LEXIS 22007, at * 6 (11th Cir. Sept.11, 2007); Tolbert v. Briggs and Stratton, Corp., 2007 WL 4201114 (11th Cir. 2007) ("To establish a *prima facie* case of discriminatory termination, an employee may prove that '[he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class.'") (Quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)).  Evidence that the employer replaced a plaintiff with an individual outside of the protected class may allow an inference of discrimination.  See Walker v. Nationsbank N.A., 53 F.3d 1548, 1556 (11th Cir. 1995); Ivey v. Paulson, 222 Fed. Appx. 815 (11th Cir. 2007) ("To establish a *prima facie* case of improper termination based on circumstantial evidence, a plaintiff must generally show that: (1) he was a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.") (Quoting Maynard v. Board of Regents of the Division of Universities of the Florida Department of Education, 342 F.3d 1281, 1289 (11th Cir. 2003)).

"To show that employees are similarly situated, a plaintiff must show that the employees are 'similarly situated in all relevant aspects.' " McDowell v. S. Nuclear Operating Co., No. 07-10943, 2007 U.S. App. LEXIS 24469, at *5 (11th Cir. Oct. 17, 2007)(quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004)).  Stated another way, the circumstances of the employee's adverse employment action must be "nearly identical" to that of other employees treated more favorably than plaintiff.  See Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999);

16

McDonell v. Gonzales, 151 Fed. Appx. 780, 782 (11th Cir. 2005) ("Appellant failed to satisfy the fourth prong of the prima facie case, namely, that similarly situated non-white employees were treated more favorably under nearly identical circumstances.").

In support of his *prima facie* showing by circumstantial evidence, plaintiff has shown that he is a member of a protected class because of his race and that he suffered an adverse job action in that he was discharged.  It also is undisputed that plaintiff was replaced by a non-African-American.  Finally, as part of his *prima facie* showing, plaintiff must show that he was qualified for the job from which he was fired.  "[T]o demonstrate that he was qualified for the position... plaintiff need only show that he or she satisfied the employer's objective qualifications."  Vessels v. Atlanta Independent School System, 408 F.3d 763, 769 (11th Cir. 2005).  Before being hired by Advance, plaintiff spent several years working for Auto Zone as a parts pro, a commercial specialist, an assistant manager, and, eventually, a store manager.  Plaintiff spent two to three years working as a store manager for Auto Zone before being hired by Advance.  Crain interviewed plaintiff for the position of store manager with Advance.  Advance obviously found that plaintiff met its objective qualifications.  Accordingly, this court finds that plaintiff has established a *prima facie* claim of discrimination.

## B. Employer's Nondiscriminatory Reason for Termination

Once the plaintiff establishes a *prima facie* claim under 42 U.S.C. § 1981, the burden shifts to the employer to offer "some legitimate, nondiscriminatory reason for the employee's [termination]."  Riley v. Emory Univ., 136 Fed. Appx. 264, 266 (11th Cir. 2005).  Advance asserts that plaintiff's termination was the result of plaintiff's poor job performance.  Crain informed

plaintiff that he would need to improve sales, inventory, customer service, and shrink.  Crain spoke with plaintiff repeatedly about these problems.  Although plaintiff occasionally improved performance in some areas for short time periods, overall plaintiff failed to meet these goals to Advance's satisfaction.  As a result, Crain gave plaintiff a 60-day ultimatum to improve store comp numbers or face termination.  The store continued to struggle with negative comp numbers until, on June 19, 2003, plaintiff's employment was terminated for poor performance.

### C. Pretext

"When the defendant produces legitimate nondiscriminatory reasons for the adverse employment action, the burden shifts back to the plaintiff to establish that these reasons were pretextual."  Earley v. Champion Int'l Corp., 907 F. 2d 1077, 1081 (11th Cir. 1990)(citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). "A plaintiff can meet this burden 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  Tippie v Spacelabs Med., Inc., 180 Fed. Appx. 51, 54 (11th Cir. 2006)(quoting Burdine, 450 U.S. at 252).  "In determining pretext, we evaluate whether the plaintiff demonstrated 'such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence.'"  Price v. M & H Valve Co., 177 Fed. Appx. 1, 12 (11th Cir. 2007)(quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).

"If the plaintiff does not offer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the defendant is entitled

to summary judgment." Id. (quoting Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11ᵗʰ Cir. 2000). "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, as long as the reason might motivate a reasonable employer." Id. 177 Fed. Appx. at 13 (quoting Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11ᵗʰ Cir. 2001)). "Stated differently, pretext is not present 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" Johnson v. Switch and Data Mgmt., 199 Fed. Appx. 834, 835 (11ᵗʰ Cir. 2006)(quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 2752, 125 L. Ed. 2d 407 (1993))(emphasis in original).

Plaintiff argues that he has offered evidence that the defendants' proffered reason for termination is unworthy of credence. He points to summaries of earning statements to show how several other stores in Crain's division were performing poorly, though the white managers of those stores were not terminated. "When making the determination, 'we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 (11ᵗʰ Cir. 2006) (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11ᵗʰ Cir. 1999)).[16]

The comparators that plaintiff has offered are white Advance store managers who worked in the same division as plaintiff, under division manager Crain. Although they are similar to plaintiff

---

[16] Although many of the cases dealing with comparators arise out of discipline for misconduct, that is not universally true. There are several cases in which the justification for an employee's discharge was poor job performance and the court of appeals required a "nearly identical" comparator for the plaintiff to show pretext. See, e.g., Williams v. Motorola, Inc., 303 F.3d 1284, 1293 (11ᵗʰ Cir. 2002); Tolbert v. Briggs and Stratton, Corp., 2007 WL 4201114 (11ᵗʰ Cir. 2007) ("Tolbert also failed to present evidence that other employees who performed equally poorly were not terminated.").

19

in many ways, including their rank, supervisor, division, performance issues, and duties, they were not "nearly identical" to plaintiff for purposes of creating a genuine issue of material fact on pretext. There is no evidence that any of the white store managers received three disciplinary warnings in advance of termination. In addition to the continuing problems with managing the store, Dial had been warned by Crain about a violation of the company policy on bank deposits, which Dial acknowledged, as well as time and attendance issues involving Dial coming in late and leaving early from work. These additional concerns about Dial's ability to manage the store set him apart from other store managers, making it likely that his employer would be less tolerant of his poor performance. Moreover, as noted above in footnote 4, several of the alleged comparators, in fact, stayed in their positions for shorter time frames than did plaintiff. Although it is true that a few of the white store managers lasted longer than plaintiff, virtually all of them eventually left employment as store managers.

Also, for the reasons explained below, plaintiff simply has failed to show that Crain and Advance lacked a good faith belief that Dial's performance at the store was unacceptable from a legitimate business point of view. Although plaintiff has offered evidence of Crain repeating to him the racially discriminatory statement of Frank Fields, a subordinate employee, that "white people is not going to buy no parts from a black store manager," followed by Crain's comment that "we've got to do something about that," this alone does not prove any discriminatory intent on Crain's part. Dial admits that the comment was made some period of time before he was discharged. "Although a [racial] comment...unrelated to a termination decision may contribute to a circumstantial case for pretext..." Bell v. Capital Veneer Works, No. 06-12253, 2007 U.S. App. LEXIS 2032, *6 n. 5 (11th Cir. Jan. 30, 2007)(citing Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227, 1229 (11th

Cir. 2002)), stray or remote remarks cannot alone make out such a case. This is particularly true in this case where the remark is at best ambiguous. Was Crain's remark, "We've got to do something about that," intended to convey agreement with Field's assessment, or was it intended to convey the notion that the store must perform better to prove itself to its customers, or was it intended to suggest that Dial should discipline Field for undermining his authority with the comment? The true meaning of the comment is nothing but speculation.

Further, plaintiff has offered the declarations of other store managers in Crain's division who held the opinion that Advance had a policy of matching the race of store managers with the community where the store was located, but there is no corroborative evidence of this "policy." The plaintiff has only the conclusory beliefs of these former employees to offer for this. Moreover, even if there is some truth to the belief, Dial himself admits that his Demopolis store was in a racially mixed area, not a predominately black or white area. (Dial Dep. p. 208). Even the evidence offered by McGruder, that he was told by Advance superiors in 2000 that store managers should "reflect the community," is not attributable to Crain, the decision-maker in this case, because Crain was not employed by Advance until 2001. The statement is simply not probative of any motivation on Crain's part to terminate plaintiff's employment, particularly given the fact that it was Crain who hired plaintiff.

In addressing the showing of pretext, "[t]he court, considering all of the evidence, ascertains whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons, sufficient to allow a reasonable fact finder to determine that these reasons were not actually what motivated its conduct." Cooley v. Great S. Wood Pres., 138 Fed. Appx. 149, 159 (11th Cir. 2005). The court finds that plaintiff has not offered significantly probative evidence upon which a

reasonable fact finder could determine that the nondiscriminatory reason for termination stated by defendant was pretext and that the conduct was motivated by an illegal racial animus.  Because plaintiff has failed to carry his burden of showing genuine issues of fact on the question of pretext, the defendants' motion for summary judgment is due to be granted.


## IV. CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented and the law governing this action, this court determines that Advance's motion for summary judgment against Dial is due to be GRANTED.

A separate order will be entered in accordance with the findings set forth herein.

DATED the 10th day of March,  2007.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE